UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| **RAYFORD L. KELLER, et al.,** § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | **CIVIL ACTION NO. V-02-62** |
| § | |
| **UNITED STATES OF AMERICA,** § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant United States of America's Motion to Alter or Amend Findings of Fact and Conclusions of Law (Dkt. No. 89). (Dkt. No. 99).[1] Having considered the motion, response, reply, record, and relevant law, the Court finds that the motion should be DENIED.[2]

### Legal Standard[3]

Rule 52(a) requires a Court in a trial without a jury to "find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a). Rule 52(a) does not require that the district court set out findings on all factual questions that arise in a case. *See Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1053-54 (5th Cir. 1997). Rather, the district court is expected to provide a clear understanding of the analytical process by which ultimate findings of material

---

[1] Defendant also filed an Amended Motion to Alter or Amend Findings of Fact and Conclusions of Law (Dkt. No. 100).

[2] A detailed summary of the events giving rise to this litigation is set forth in an August 20, 2009, Findings of Fact and Conclusions of Law (Dkt. No. 89).

[3] Plaintiffs requested that the Court wait to decide this motion until after the entry of Judgment, as a motion to alter or amend findings is not due until "10 days after entry of judgment"—after December 1, 2009, the deadline is 28 days after entry of judgment. Fed. R. Civ. P. 52(b). However, because both Parties have extensively responded to the motion, and because the motion affects the final calculations in this case, the Court finds it appropriate to rule on the motion at this time.

facts were reached.  *See id.*  Rule 52(b) permits a Court, on motion, to amend its findings or make additional findings.  Fed. R. Civ. P. 52(b).  The purpose of Rule 52(b) is, generally, to correct manifest errors of law or fact.  *See Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986).  "This is not to say, however, that a motion to amend should be employed to introduce evidence that was available at trial but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits."  *Id.*  To prevail on a Rule 52(b) motion to amend, the moving party must show that the Court's findings of fact or conclusions of law are not supported by evidence in the record.  *Id.*

## Validity of the Loan

Defendant moves the Court to amend or alter its holding that the Estate was entitled to deduct interest on the loan from the partnership to Trust A and Trust M.  Defendant's motion is based on two grounds: 1) the loan lacked economic substance and was created for the purpose of generating a deduction and 2) even if the loan was proper, any loan payments after August 14, 2004, are not deductible under I.R.C. § 2053(b).  The Court will address the Defendant's arguments separately.

Section 2053 of the Internal Revenue Code provides for the deductibility of administration expenses that are actually and necessarily incurred in the administration of a decedent's estate.  I.R.C. § 2053(a); Treas. Reg. § 20.2053-3(a).  Accordingly, a deduction is allowed for interest on a loan which was actually and necessarily incurred for the administration of the Estate.  *See, e.g.*, Treas. Reg. § 20.2053-3(a); *Estate of Graegin v. Comm'r*, 56 T.C.M. (CCH) 387 (1988).  Defendant, however, claims that the loan at issue "was a complete sham" and that "the [C]ourt incorrectly found that the loan somehow preserved the liquidity of the

estate." (Dkt. No. 100 at 5). A brief description of the events giving rise to the loan is warranted.

"After Mrs. Williams' death in May 2000, those who had been working on the formation of the Partnership essentially stood down, ceasing all activity . . . . [, as] [a]t the time of Mrs. Williams' passing, Mrs. Williams' advisors did not feel that the Partnership had been properly formed or that they had an obligation to document the intended transfer of Bonds to the Partnership." (Dkt. No. 89 at 20). "Accordingly, on or about February 12, 2001, a check in the amount of $147,800,245 was drawn from accounts relating to the Family Trust and made payable to the United States Treasury with a Form 4768 with respect to Mrs. Williams' estate." (*Id*. 20-21 (footnote omitted)). Later, "after Mrs. Williams' advisors determined that the Partnership had indeed been established[—and that the Community Property Bonds were Partnership property and beneficially owned by the Partnership upon its creation, (Dkt. No. 89 at 23),—]and with an eye towards preserving the liquidity of Mrs. Williams' estate, the estate (and the Family Trust) borrowed certain funds from the Partnership to pay the federal estate taxes, Texas inheritance taxes, and other debts and obligations arising from the Partnership." (Dkt. No. 89 at 24). This was because "Mrs. Williams estate lacked sufficient liquid assets to pay its necessary taxes and obligations without forcing the sale of its illiquid properties." (Dkt. No. 89 at 37).

The Defendant claims that this loan lacked economic substance, "a multi-factor test for when a transaction must be honored as legitimate for tax purposes, with factors including whether the transaction (1) has economic substance compelled by business or regulatory realities, (2) is imbued with independent tax consideration, and (3) is not shaped totally by tax avoidance

features." *Klamath Strategic Inv. Fund v. United States*, 568 F.3d 537, 544 (5th Cir. 2009) (adopting the majority view that "a lack of economic substance is sufficient to invalidate the transaction regardless of whether the taxpayer has motives other than tax avoidance").[4]

The loan in this case satisfies the economic substance test. The loan at issue imposed liability on the makers in the event of default and applied interest at the applicable federal rate. Moreover, millions of dollars of interest have been paid on the loan and reported as income to the Partnership. Further, the loan was entered into to preserve the liquidity of the estate.

The government claims that there was no liquidity problem because the assets were already liquidated to pay the taxes before the loan transaction was executed—it was not until after the taxes were originally paid that the loan was entered into to preserve the liquidity of the Estate.

The Court believes that its findings regarding liquidity are supported by evidence in the record. As a necessary measure to preserve the liquidity of the Estate, the Estate and Family Trust borrowed funds to pay taxes of the Estate. While it is true that Mrs. Williams' advisors, at first, did not believe the Partnership was established, and drew a check from Family Trust accounts to pay taxes, the trust *did* exist and there in fact *was* a liquidity problem for the Estate. As a result, the Estate and the Family Trust incurred interest expenses on the loan, and those interest expenses are deductible.

---

[4]Plaintiffs claim that *Klamath* is not binding as it is an income tax case and income tax rules and estate tax rules are not to be construed *in pari materia*. *See Galt v. Comm'r*, 216 F.2d 41, 45 (7th Cir. 1954); *see also Bilingual Montessori Sch. of Paris v. Comm'r*, 75 T.C. 480, 485 (1980). However, as the Fifth Circuit observed in *Kimbell v. United States*, 371 F.3d 257, 264 (5th Cir. 2004), the doctrine of economic substance applies in income tax cases and estate tax cases. *Id.* ("A transaction motivated solely by tax planning with no business or corporate purpose is nothing more than a contrivance without substance that is rightly ignored for purposes of the tax computation." (citation omitted)).

**Interest Deductions Subsequent to August 14, 2004**

The Defendant also asserts that even if the interest deduction is permitted, any interest that was not paid before August 14, 2004, is time barred. This is because all interest payments have been made by the Family Trust, Trust A and Trust M, which was not part of the probate estate. Section 2053(b) provides that:

> (b) Other administration expenses.—Subject to the limitations in paragraph (1) of subsection (c), there shall be deducted in determining the taxable estate amounts representing *expenses incurred in administering property not subject to claims* which is included in the gross estate to the same extent such amounts would be allowable as a deduction under subsection (a) if such property were subject to claims, and such amounts are paid before the expiration of the period of limitation for assessment provided in section 6501.

I.R.C. § 2053(b) (emphasis added).

> Section 2053(a) provides that:
>
> (a) General rule.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—
>    (1) for funeral expenses,
>    (2) for administration expenses,
>    (3) for claims against the estate, and
>    (4) for unpaid mortgages on, or any indebtedness in respect of, property
> where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,
>
> as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

I.R.C. § 2053(a).

Section 2053(c)(2) limits the deductions allowable under Section 2053(a) and provides a definition of "property subject to claims." Section 2053(c)(2) provides that:

> (2) Limitations applicable only to subsection (a).—In the case of amounts described in subsection (a), there shall be disallowed the amount by which the deductions specified therein exceed the value, at the time of the decedent's death,

>of property subject to claims, except to the extent that such deductions represent amount paid before the date prescribed for the filing of the estate tax return. For purposes of this section, the term *"property subject to claims" means property includible in the gross estate of the decedent which, or the avails of which, would under the applicable law, bear the burden of the payment of such deductions in the final adjustment and settlement of the estate*, except that the value of the property shall be reduced by the amount of the deduction under section 2054 attributable to such property.

I.R.C. § 2053(c)(2) (emphasis added).

Plaintiffs claim that Section 2053(b) has no applicability in this case and 2053(a) is controlling. In order for 2053(a) to apply, the deduction must be allowable under Texas law and "subject to claims." While the two issues overlap, the Court will attempt to address the two issues separately.

**Subject to Claims**

If Trust A and Trust M are "property *not* subject to claims," and no exception applies, payments made after the Section 6501 statute of limitations for assessing additional taxes—three years after the Estate tax return was filed, or August 14, 2004—are not deductible. "Property subject to claims" is defined by reference to Section 2053(c)(2): "'property subject to claims' means property includible in the gross estate of the decedent which, or the avails of which, would under the applicable law, bear the burden of the payment of such deductions in the final adjustment and settlement of the estate . . . ." I.R.C. § 2053(c)(2). Defendant claims that property "not subject to claims" is generally property that passes outside of the probate estate. *Estate of Streeter v. Comm'r*, 491 F.2d 375, 379 (3d Cir. 1974). The Family Trust did pass outside of the probate estate. Plaintiffs, on the other hand, assert that Section 2053(c)(2) makes no distinction between probate and non-probate assets in defining property "subject to claims" for purposes of the Section 2053(a) limitation. *See Estate of Snyder v. United States*, 84 A.F.T.R.2d 99-5963

(Fed. Cl.). Instead, they point out, Section 2053(c)(2) expressly provides that "the term 'property subject to claims' means property *includible* in the gross estate of the decedent *which*, or the avails of which, would *bear the burden of payment of such deductions* in the final adjustment and settlement of the estate." I.R.C. § 2053(c)(2) (emphasis added); *Estate of Snyder*, 84 A.F.T.R.2d at 99-5965 (allowing a Section 2053(a) deduction from non-probate property); I.R.S. Priv. Ltr. Rul. 91-23-024 (June 7, 1991) (allowing interest on deferred estate tax that was paid by a revocable trust to be deducted under Section 2053(a), as, under state law, the assets were subject to claims against the estate as a result of the general power of appointment). The Court agrees with Plaintiff that whether property is "subject to claims" under Section 2053 is not informed by whether property was part of the probate estate. The inquiry is whether Trust A and Trust M "bore the burden of payment" of the claimed deductions.

In Texas, a settlor may create a trust for any purpose that is not illegal. Tex. Prop. Code § 112.031 (Vernon 2009). Accordingly, a settlor has broad authority with respect to the disposition of the settlor's property. The Texas Trust Code further provides that fiduciaries "administer a trust or estate in accordance with the terms of the trust or will, even if there is a different provision in this chapter." Tex. Prop. Code § 116.004(a)(1) (Vernon 2009). Here, the Executors and Trustees were obligated to pay the administration expenses of the Estate pursuant to the directives of Mrs. Williams' Last Will and Testament, (Dkt. 109, Ex. 1), and the Family Trust, (Dkt. 109, Ex. 2).

Mrs. Williams' Will mandates that all legally enforceable debts and obligations, administration expenses, and taxes of her estate be paid either from the Family Trust or residuary estate. (Dkt. No. 109, Ex. 1 at 21). Accordingly, the Executors were given discretion as to where

payment would come from, but payment was mandatory.[5] (*Id.*). The Executors had the power to direct the Trustees of the Family Trust to pay such debts, expenses, and taxes. Indeed, Article IX of the Family Trust contemplates the Trustees receiving such direction and provides that the Trustees "shall pay" such debts, expenses, and taxes as directed. (Dkt. No. 109, Ex. 2, at 43).

The Family Trust allocates payment between Trust A and Trust M. Under Article 9.1 of the Trust Agreement, Trust A is liable for funeral expenses, administration expenses, estate taxes, and inheritance taxes of the Surviving Settlor's estate. (*Id.*). According to Article 3.5(G)(3) of the Family Trust, Trust M is liable for the portion of the federal estate taxes and state inheritance taxes owed by the Estate as a result of Trust M's inclusion in the Surviving Settlor's gross estate. (*Id.* at 9).

The Texas Probate Code authorizes executors to pay the administration expenses and estate taxes of a decedent. Tex. Prob. Code Ann. § 234 (Vernon 2009). The Texas Probate Code and Texas Trust Code also specifically require executors to pay administration expenses and estate taxes in accordance with the terms of a decedent's trust or will. Tex. Prob. Code Ann. § 322A(b)(2) (Vernon 2009); Tex. Prop. Code § 116.004(a)(1) (Vernon 2009). If the Trustees of the Trust did not comply with the express directives included in the Family Trust, they would

---

[5] Mrs. Williams' residuary probate estate was valued at approximately $8,700,000 as of the date of her death. (Dkt. 109, Ex. 3). Consequently, Mrs. Willliams' residuary estate was grossly insufficient to cover the approximate $143,000,000 federal estate tax liability and $58,000,000 state inheritance tax liability, nor could the probate estate handle the coming administrative expenses. Although the Executors of Mrs. Williams' Will had the discretion as to the source of the payments of debts, expenses, and taxes—either from the residuary estate or from the assets of Trust A and Trust M—due to the insufficient funds available in the residuary estate, the Executors of her Estate were required to direct the Trustees of the trusts to pay the debts, administration expenses, and taxes of the Estate. While the trusts were responsible for taxes and administration expenses, they had what was later discovered to be an illiquid interest in the Partnership. To obtain funds to pay the applicable taxes, the Estate and trusts entered into a binding contract with the Partnership to obtain funds to pay the taxes—this transaction was complete with interest payable at the applicable federal rate. The trusts signed the promissory note and accepted joint and several liability for the repayment of the loan to the Partnership. Accordingly, the trusts are contractually bound under the note—which was necessary to pay such taxes.

have breached their fiduciary duties and been in contravention of Texas law.

After reading the relevant provisions of the Will and the Trust Agreement, the Court finds that Trust M and Trust A would "bear the burden of payment" under Texas law.  Accordingly, the *administrative expense* of interest on the loan is deductible.

**Allowable Under Texas Law**

Under Section 242 of the Texas Probate code, personal representatives of an estate are entitled to all necessary and reasonable expenses incurred by them in the "preservation, safekeeping, and management of the estate, and in collecting or attempting to collect claims or debts, and in recovering or attempting to recover property to which the estate has a title or claim, and all reasonable attorney's fees, necessarily incurred in connection with the proceedings and management of such estate."  Tex. Prob. Code Ann. § 242 (Vernon 2009).  Independent executors may pay those expenses without court approval. Tex. Prob. Code Ann. §§ 145(h), 146 (Vernon 2009).

These expenses and claims may be made payable from the sources and in the amounts directed by a decedent's intent, as expressed in the decedent's will.  Tex. Prob. Code Ann. § 322B(d) (Vernon 2009).  Similarly, estate and inheritance taxes, including interest and penalties, may also be made payable from the sources and in the amounts directed by a decedent in a written inter vivos or testamentary instrument disposing of or creating an interest in property, subject to various limitations set forth in the Probate Code.  Tex. Prob. Code Ann. § 322A(b)(2)-(4) (Vernon 2009).

The expenses claimed by the Plaintiffs, and approved by the Court, are the type of expenses allowable under Texas law.  Therefore, the "allowable by the laws of the jurisdiction"

requirement is satisfied for the expenses claimed by Plaintiffs.

Accordingly, Plaintiffs' interest deduction is not limited to payments made before August 14, 2004, as Trust A and Trust M "bore the burden of payment" and the expenses are allowable under Texas law.

## Conclusion

For the reasons articulated above, Defendant's Motion to Alter or Amend Findings of Fact and Conclusions of Law is DENIED. All of the interest incurred on the loan from the Partnership to the Estate is deductible as an administrative expense.

Signed this 14th day of September, 2010.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE