# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

| | | |
|---|---|---|
| **RAYFORD L. KELLER, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. V-02-62** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Plaintiffs' Proposed Calculation of Deductions.  (Dkt. No. 90).

Having considered the proposal, objections, responses, replies, record, and relevant law, the Court

is of the opinion that Plaintiffs are entitled to a deduction in the amount of $60,357,085.39.

### Background and Procedural History

On August 20, 2009, the Court entered an order granting Plaintiffs' request for an estate

tax refund.  The Court ordered the Plaintiffs to submit a proposed calculation of the deductions

the Court found to be permissible, to wit: interest on the loan, attorneys' fees, and miscellaneous

administrative expenses such as court costs, accountants' fees, and appraisers' fees.  The instant

motion addresses these calculations.  A more detailed summary of the events giving rise to this

litigation is set forth in the Court's August 20, 2009, Findings of Fact and Conclusions of Law

(Dkt. No. 89).

### Legal Standard

In order to be deductible, the claimed expenses must satisfy the requirements of Section 2053

of the Internal Revenue Code.  Section 2053(a)(2) provides, in part, that the value of the taxable

estate shall be determined by reducing from the value of the gross estate amounts for administration

expenses.  Such expenses must be allowable under the law of the jurisdiction under which the estate

is being administered, 26 U.S.C. § 2053(a), i.e., in this case, Texas.  Additionally, Treasury

Regulations § 20.2053-3(a)[1] provides, in pertinent part:

> a) In general. The amounts deductible from a decedent's gross estate as "administration expenses" . . . are limited to such expenses as are actually and necessarily, incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it.  The expenses contemplated in the law are such only as attend the settlement of an estate and the transfer of the property of the estate to individual beneficiaries or to a trustee, whether the trustee is the executor or some other person. Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions. Administration expenses include (1) executor's commissions; (2) attorney's fees; and (3) miscellaneous expenses.  Each of these classes is considered separately in paragraphs (b) through (d) of this section.

Therefore, in order to claim an administrative expense deduction, the Estate must show that

the expenses were <u>actually</u> and <u>necessarily</u> incurred in the administration of the decedent's estate.

The Defendant argues that many claimed administration expenses are for the benefit of the

heirs, legatees, and devisees, and do not qualify as deductible under Section 2053.         The Court

will address each category of expense separately.  Unless otherwise noted, the expenses addressed

in this Order are computed through February 10, 2010.[2]

**<u>Accounting Fees</u>**

Plaintiffs most recent submission requests an accounting deduction in the amount of

---

[1]The Internal Revenue Service issued new regulations under § 20.2053-3.  These new regulations were effective October 2009.  References here are to the prior regulations which were in effect during the period the expenses in issue were paid.

[2]Plaintiffs submitted their Second Amended Submission of Deductions on February 11, 2010, which calculated administrative expenses paid through February 10, 2010.  (Dkt. No. 111, Ex. A).  Defendant has not responded to Plaintiffs' last submission.  Because this submission contains the most recent calculations, and because the Court must determine a cut-off point for its involvement in the calculations at issue, the Court will only consider administrative expenses paid through February 10, 2010, in ruling on whether Plaintiffs' administrative expenses are proper.

$4,678,176.89.   This amount includes $1,461,176.89 in fees paid to Keller & Associates, a $2,400,000.00 payment for past and future work to Keller & Associates, and $817,000.00 as payment for services provided by Rayford Keller.   The Court will address each of Defendant's objections separately.

### A. Contingency Fee or "Extra" Payment to Keller & Associates

Plaintiffs first submitted a $2,362,461.00 contingency fee deduction for accounting work performed and to be performed by Keller & Associates.  (Dkt. No. 90, Ex. A).  After Defendant objected to the contingency fee, Plaintiffs amended their submission and proposed a $2,400,000.00 payment to Keller & Associates in lieu of the contingency fee—this is on top of the amounts already paid to Keller & Associates.  The contingency fee agreement was entered into by the Estate on September 18, 2009, after this Court's findings were entered on August 20, 2009.  Similarly, the amended agreement to pay Keller & Associates $2,400,000.00 was entered into after the contingency fee agreement—on November 16, 2009.  While Plaintiffs assert that this payment does not just represent "work already paid for," as it also includes ongoing work by Keller & Associates, the Court does not find these payments to be "necessary" to the administration of the Estate.  The Court is sympathetic to Plaintiffs' claims that this litigation is far from "resolved" and that there will be ongoing accounting work; however, a $2,400,000.00 payment for future work, or a "bonus" for work already performed, is not "necessary" accounting work.  Accordingly, the $2,400,000.00 payment to Keller & Associates is not a proper deduction.

### B. Other Fees Paid to Keller & Associates

Plaintiffs proposed calculation includes a deduction for accounting services provided by Keller & Associates in the amount of $1,461,176.89.  This amount is for work that has already been

performed by Keller & Associates.  Defendant objects to these charges because 1) some of the fees might have related to services provided for related Williams' entities, besides the Estate and 2) it is impossible to tell exactly what services were provided and some of the expenditures may have been incurred "for the individual benefit of the heirs, legatees, or devisees."

The Executors have declared under penalties of perjury, (Dkt. No. 98, Ex. 1), that the total amount of accounting fees claimed as deductions are for purposes of the administration of the Estate. The Court finds that all of the claimed deduction for payments made to Keller & Associates is for work actually and necessarily performed by that accounting firm for the administration of the Estate. Accordingly, the deduction for fees paid to Keller & Associates in the amount of $1,461,176.89 is proper.

### C. Services Provided by Rayford Keller

Plaintiffs submitted an accounting deduction for work performed by Rayford Keller in the amount of $817,000.00.  Defendant objects, stating: 1) Rayford Keller is also an Executor of the estate, and has been paid for his work as Executor, and therefore any accounting work performed by him may be duplicative of work performed in his role as Executor and 2) Rayford Keller's son's accounting firm, Keller & Associates, was paid for its accounting services and the fees paid to Rayford Keller may be duplicative of those paid to Keller & Associates.

The Court finds that all fees paid to Rayford Keller for accounting services were actually and necessarily incurred in the administration of the Estate.  As the Court noted in its Findings of Fact and Conclusions of Law, (Dkt. No. 89), Rayford Keller's extensive involvement and knowledge of decedent's estate put him in a position to be uniquely valuable in providing accounting services to the Estate.  Rayford Keller was retained as a consultant independent of the accounting services

4

provided by Keller & Associates.  The Court finds that Rayford Keller's services were not duplicative of those performed in his role as Executor or of services performed by Keller & Associates.  The Court also finds that his accounting services were actually provided and necessary to the Estate's administration.

**D. Fees Incurred After August 20, 2009**

Defendant objects to accountants' fees incurred after August 20, 2009, the date the Court entered its Findings of Fact and Conclusions of Law.  Defendant claims that any fees incurred after August 20, 2009, cannot constitute a deductible administration expense under Section 2053 because, it claims, all accounting work had been done.  As Plaintiffs correctly note, the Court's Findings of Fact and Conclusions of Law did not cause an immediate resolution to this litigation.  The additional fees incurred by Plaintiffs are both actual and necessary and qualify as deductible administration expenses under Section 2053(a)(2).

**E. Fees Claimed on Estate's Annual Income Tax Return**

Defendant voiced concern that the Estate may have claimed accounting fees on its annual income tax return, and noted that the Estate is not permitted to, again, claim such fees on its estate tax return.  The Executors declared under penalties of perjury, (Dkt. No. 98, Ex. 1),  that none of the claimed accountants' fees have been or will be claimed as an income tax deduction.  Plaintiffs further assert that they will notify the Internal Revenue Service if any such income tax deduction is made.  The Court is satisfied that the Estate has not claimed any of the accounting fees at issue on its income tax returns.

**F. Fees Paid After August 14, 2004**

Defendant objects to any accounting expenses paid by the Family Trust after August 14,

2004, as, it claims, under I.R.C. § 2053(b), Trust A and Trust M, were "not subject to claims."  For the reasons stated in the Court's Memorandum Opinion and Order addressing Defendant's Motion to Alter or Amend Findings of Fact and Conclusions of Law, (Dkt. No. 112), the Court rejects this argument.

Accordingly, Plaintiffs deduction of $817,000.00 paid to Rayford Keller and $1,461,176.89 paid to Keller & Associates is proper, as those payments were actual and necessary to the administration of the Estate.  However, the payment of a "flat fee" of $2,400,000.00 to Keller & Associates is not necessary to the Estate's administration.  Plaintiffs total permitted deduction of accounting fees is $2,278,176.89.

**Legal Fees**

Plaintiffs' Second Amended Submission of Deductions, (Dkt. No. 111, Ex. A), claims a deduction for attorneys' fees in the amount of $12,106,415.68.  This amount includes: 1)$1,550.00 in fees paid to Abrams Mediation & Negotiation, Inc.; 2) $551.10 in fees paid to AK/RET Reporting, Records, & Video; 3) $11,900.00 in fees paid to Baker & McKenzie; 4) $49,143.14 in fees paid to Bisignano & Harrison LLP; 5) $67,382.00 in fees paid to Coudert Brothers; 6) $61,272.90 in fees paid to Hughes Hubbard & Reed LLP; 7) $2,053.79 in fees paid to the Law Office of Mickey Pachta; 8) $1,784.58 in fees to Marr Meier Bradicich LLP; 9) $2,439,514.18 in fees paid to Meadows, Owens, Collier, Reed Co.; 10) $9,470,606.00 in a contingent fee to Meadows, Owens, Collier, Reed Co; and 11) $657.99 in fees to Hundt Reporting LLC.  The Court will address Defendant's objections separately.

### A. Contingent Fee

Defendant claims the contingency fee to be paid to Meadows, Owens, Collier, Reed Co.

6

("Meadows, Collier") in the amount of $9,470,606.00 is unnecessary.

On September 11, 2009, after the Court entered its August 20, 2009, Findings of Fact and Conclusions of Law, Plaintiffs and Meadows, Collier executed the "Amended and Restated Fee Agreement." (Dkt. No. 90, Ex. B). Plaintiffs claim this agreement simply memorializes a previous understanding between Meadows, Collier and Plaintiffs regarding continued legal representation and compensation in connection with the Estate's refund claims. Plaintiffs claim that, from the inception of this case, Plaintiffs and Meadows, Collier agreed that the law firm would receive an undefined bonus contingent on the recovery of a sizable refund. Plaintiffs assert that the Amended and Restated Fee Agreement simply quantifies the original bonus agreement and confirms the terms of the continued legal representation. While the Court understands Plaintiffs' claim that this fee agreement not only includes a bonus for work already performed, but also includes yet to be performed work, as the Estate's tax issues were not yet resolved when this agreement was entered into, the Court cannot find that these fees are "necessary" to the administration of the Estate. The Amended and Restated Fee Agreement provides for Meadows, Collier to be compensated on an hourly rate, in addition to the contingency fee. (Dkt. No. 90, Ex. B). The Court finds that the contingency fee is not necessary to the administration of the Estate; rather, it is an attempt by Plaintiffs to increase their deductions.[3]

### B. Fees Claimed on Estate's Annual Income Tax Return

Defendant's concern that the Estate may have claimed attorneys' fees on its annual income tax return is not warranted. The Executors declared under penalties of perjury, (Dkt. No. 98, Ex. 1), that none of the attorneys' fees at issue have been or will be claimed as an income tax deduction.

---

[3]Defendant also asserts that the contingent fee is invalid because it was not in writing. While Plaintiffs contest this assertion, the Court need not address this objection since the contingent fee is not "necessary."

Plaintiffs further asserted that they will notify the Internal Revenue Service if any such income tax deduction is made.  The Court is satisfied that the Estate has not claimed any of the attorneys' fees at issue on its income tax returns.

### C. Necessity of Attorneys Work

Defendant also asserts that some of the work performed by the numerous law firms involved in this case may not have been necessary and that their work may have been duplicative.

In addition to Meadows, Collier, the following firms provided legal services in connection with the administration of the Estate: Law Office of Mickey Pachta, Marr Meier Bradicich LLP, Bisignano & Harrison LLP, Coudert Brothers, Baker & McKenzie, and Hughes Hubbard & Reed LLP.  The description of the services performed by each law firm, as provided by Plaintiffs, is as follows:

> The Law Office of Mickey Pachta handled the probate of the Estate; Marr Meier & Bradicich LLP is a local Victoria firm that handled small matters for the Estate, such as a real estate filing and filing of trustee resignation; Bisignano & Harrison LLP drafted the Partnership documents and consulted in the refund litigation; and the fees paid to Coudert Brothers LLP, Baker & McKenzie LLP, and Hughes Hubbard & Reed LLP all relate to legal services provided by Kenneth R. Page in the administration of the Estate.  Kenneth R. Page changed firms during the course of the administration of the Estate and refund litigation.

(Dkt. No. 98 at 5).

Defendant objects to specific billings by certain law offices, asserting that those billings are in the nature of investment advice for the benefit of beneficiaries and not allowable under Section 2053.

Defendant first objects to the February 28, 2006, and June 6, 2006, billings by Baker & McKenzie in the amounts of $7,250 and $1,500 respectively.  (Dkt. No. 103, Ex. 108).  This is because those billings assert that, among other things, the firm assisted with the investment of

8

partnership assets.  However, these billings also articulate that Baker & McKenzie provided assistance on the refund litigation.  While more detailed billing statements would be helpful in ruling on these amounts, the Court is satisfied that these billings were actually and necessarily incurred in the administration of the Estate and are deductible under Section 2053.

The United States also contests the billings of Bisignano & Harrison in the total amount of $5,227.  (Dkt. No. 103, Ex. 109).  These billings relate to drafting a surface partnership agreement, updating corporate records, and drafting new partnership documents, and Defendant asserts these are expenses that are not properly chargeable as an estate administrative expense.  After looking at the billings in question, (Dkt. No. 103, Ex. 109 (e.g., "review and organization of files in connection with MOW/RPW Management Company"; "[c]onference . . . regarding new partnership")), and crediting the Executors' sworn statement that the claimed legal services were performed in connection with the administration of the Estate, the Court finds the billings from Bisignano & Harrison to be actual and necessary and, accordingly, deductible.

Defendant also claims that the October 9, 2003, May 25, 2005, and August 16, 2005, billings from Caudert Brothers in the amounts of $23,250, $9,650, and $1,600, (Dkt. No. 103, Ex. 110), and the December 19, 2006, billing from Hughes Hubbard & Reed for $7,250, (Dkt. No. 103, Ex. 111), should be, at least, partially disallowed because they relate to the selection of investment advisors for the investment and administration of the Partnership. While the billing notations state that assistance was rendered regarding the selection of investment advisors, the billings, primarily, appear to be in relation to the Estate's refund litigation.  The Court finds that these billings were actually and necessarily incurred in the administration of the Estate.

Last, Defendant objects to the April 24, 2008, and August 25, 2008, billings in the amounts

of $10,850 and $10,325 from Hughes Hubbard & Reed. (Dkt. No. 103, Ex. 112). Defendant asserts that these billings relate to advice with respect to investing in a nuclear power plant and other services that do not qualify as Section 2053 administrative expenses. While, as stated above, a more detailed billing statement would provide the Court with more guidance on this matter, the Court credits the Executors' sworn statement that the billings claimed are for legal services performed in connection with the administration of the Estate. Accordingly, the Court finds these billings to be actual and necessary to the administration of the Estate. (Dkt. No. 103, Ex. 112 ("Travel to and from Victoria, Texas and advice and assistance as requested at meetings of the executors and others to review and consider tax and other planning and administration proposals and matters."; "Travel to and from Victoria, Texas and advice and assistance as requested at meetings of the executors and family on June 23, 24, and 25, 2008 and others to review and consider tax and other planning and administration proposals and matters.")).

All of Plaintiffs' legal deductions, less the $9,470,606.00 contingency fee payment, are deductible under Section 2053, as the Court finds that those expenses are actual and necessary. The total amount of deductible legal expenses is $2,635,809.68.

**Interest Expenses**

The Court has previously ruled that the deduction for interest on the loan from the Partnership is deductible. (Dkt. No. 89 at 37). The Court, again, addressed this issue in its Memorandum Opinion and Order addressing Defendant's Motion to Alter or Amend Findings of Fact and Conclusions of Law. (Dkt. No. 112). Plaintiffs calculate the amount of loan interest paid through February 10, 2010, as $52,751,359.33. (Dkt. No. 111, Ex. A). However, the Court is not satisfied that the loan interest is calculated correctly—"by using the applicable federal rate (the

"AFR") for February 2001 (5.07 percent) multiplied by the principal of the outstanding balance of the loan ($114,000,000.00), and then multiplied by the term of the loan (9 years)." (Dkt. No. 98 at 3). Indeed, in Plaintiffs' Response to Defendant's Objections to Proposed Calculation of Deductions, Plaintiffs noted that, based on Plaintiffs' calculations, "the total interest on the loan will equal $52,018,200.00" when the loan comes due on February 15, 2010. (Dkt. No. 98 at 3). Accordingly, it is curious that Plaintiffs calculate the interest paid on the loan as $52,751,359.33 as of February 10, 2010—five days before the loan was due. Because the February 15, 2010, due date on the loan has passed, and because the Court is satisfied that the loan calculation noted in Plaintiffs' Response to Defendant's Objections to Proposed Calculation of Deductions, (Dkt. No. 98 at 3), is correct through February 15, 2010, the Court finds that a deduction in the amount of $52,018,200.00 is proper. Since the Court is satisfied that the loan was necessary to preserve the liquidity of the estate, that the loan was necessary to pay the Estate's taxes, and that the Estate plans to repay the loan, all of the interest on the loan is deductible—$52,018,200.00.

**Executor/Trustee Fees**

Plaintiffs claim executor/trustee fees in the amount of $15,000,000.00. The fees were paid as follows: $6,000,000.00 to Ann Harithas; $3,000,000.00 to Michael Anderson; $3,000,000.00 to Steven Anderson; and $3,000,000.00 to Rayford Keller. Defendant objects to the executor/trustee fees paid by Plaintiffs on numerous grounds.

First, Defendant claims the executor/trustee fees are a disguised distribution to heirs. Ann Harithas, Mrs. Williams' daughter, received $6,000,000.00 in executor/trustee fees, and Mrs. Williams' grandchildren, Michael Anderson and Steven Anderson, each received $3,000,000.00 in executor/trustee fees—a perfect split based upon their lineage. The Court agrees with Defendant

that any executor/trustee fees paid to Ann Harithas, Michael Anderson, or Steven Anderson were not "necessary."    The record shows that Rayford Keller, who was paid $3,000,000.00 in executor/trustee fees, was actually the person who performed the role of Executor of the Estate, and the Court finds that all payments made to him in his role as Executor were both actual and necessary. The Court cannot say the same for payments made to the other three Executors.

Plaintiffs claim that Defendant should not be heard to complain about the executor/trustee fees because the amount of fees has not changed from the original amount shown on the Estate tax return, and the executor/trustee fees have not been an issue in this case until now.  However, this is not a situation where Defendant should be precluded from challenging the "amount" of executor/trustee fees.  The amount of Plaintiffs' executor/trustee fees was unclear when this action was filed—the amount asserted at that time was an estimate.  Payment of the executor/trustee fees did not start until late December 2003 and was not completed until early January 2008—even though the Estate tax return was filed in August 2001.  (Dkt. No. 98, Ex. C).  The Government is not precluded from objecting to the amount of the executor/trustee fees any more than the Plaintiffs are precluded from claiming additional attorneys' fees.  In order for Plaintiffs to deduct executor/trustee fees as administrative expenses, those fees must be <u>actually</u> and <u>necessarily</u> incurred in the administration of the decedent's estate.   26 U.S.C. § 2053(a); Treas. Reg. § 20.2053-3(a). Accordingly, Defendant's "necessity" objection is appropriate.

Plaintiffs also suggest that the Court has already found the executor/trustee fees at issue to be admissible in its Findings of Fact and Conclusions of Law.  (Dkt. No. 89 at 25).  While the Court did find that executors' fees were allowable as an administrative deduction, it did not quantify the amount it would allow.  The Court will not allow the $12,000,000.00 paid to Ann Harithas, Michael

Anderson, or Steven Anderson as an administrative deduction.

The amount of executor/trustee fees must be permitted by state law.  Treas. Reg. § 20.5053-3(b)(1).  Defendant claims that the maximum amount of executors' fees allowable under Texas law, given the value of Mrs. Williams' estate, is $745,171.90.[4]

In Texas, a trustee of a trust, on the other hand, is entitled to reasonable compensation for acting as trustee.  Tex. Prop. Code Ann. § 114.061 (Vernon 2009).  Trustees' fees are only deductible "to the extent that a trustee is in fact performing services with respect to property subject to claims which would normally be performed by an executor." Treas. Reg. § 20.2053-3(b)(3).

The evidence before the Court shows that Rayford Keller performed diligently as Executor for the Estate and as Trustee for the Trusts—performing executor-like responsibilities.  Assuming Defendant's calculation of the value of Mrs. Williams' Estate is correct, and executors' fees are limited to $745,171.90, the Court finds that a compensation of $2,254,828.10 for Rayford Keller's executor-like functions as Trustee are reasonable.  Accordingly, the $3,000,000.00 deduction is permissible under Texas law.

Last, Defendant claims that any fees incurred after August 14, 2004, cannot be claimed as an administrative expense deduction because the executor/trustee fees were paid by the Family Trust and the Trusts are "not subject to claims."  *See* I.R.C. § 2053(a), (b).  For the reasons articulated in the Court's Memorandum Opinion and Order denying Defendant's Motion to Alter or Amend Findings of Fact and Conclusions of Law, (Dkt. No. 112), this objection is overruled.

Because the Court finds that the executor/trustee fees paid to Rayford Keller are reasonable

---

[4]Under Texas law, an executor is entitled to a maximum of five percent of the gross fair market value of the estate subject to administration. Tex. Prob. Code Ann. § 241(a) (Vernon 2009).  According to Defendant, the value of the estate subject to probate administration is $14,903,438.  (Dkt. No. 103 at 15).  And five percent of that amount is $745,171.90.

under the circumstances, actual, necessary, and allowable under state law, the Estate is permitted to deduct $3,000,000.00 in executor/trustee fees.

**Business Expenses**

Plaintiffs submitted business deductions in the amount of $154,558.83. The deductions are as follows: 1) $545.00—Bank Fees; 2) $109,635.56—Martin O'Connor Estate Office Expense; 3) $656.03—Martin O'Connor Cattle Company; 4) $15,256.81—Utilities and Maintenance; 5) $1,109.12—Keller & Associates, CPAs; 6) $5,993.91—United States Treasury; 7) $21,224.00—Funeral Expenses; and 8) $138.40—Miscellaneous Expenses.

Defendant believes that some of the requested deductions for business expenses exceed what the Court said it would allow in its opinion, and even if they are allowed, some expenses may not have been necessary expenses of administering the Estate.

Treasury Regulation Section 20.2053-3(d) governs the deductibility of miscellaneous administrative expenses. It provides:

> (d) Miscellaneous administration expenses. (1) Miscellaneous administration expenses include such expenses as court costs, surrogates' fees, accountants' fees, appraisers' fees, clerk hire, etc. Expenses necessarily incurred in preserving and distributing the estate, including the cost of storing or maintaining property of the estate, if it is impossible to effect immediate distribution to the beneficiaries, are deductible to the extent permitted by § 20.2053-1. Expenses for preserving and caring for the property may not include outlays for additions or improvements; nor will such expenses be allowed for a longer period than the executor is reasonably required to retain the property.

The Untied States believes that the business deductions for utilities and maintenance should be disallowed because these expenses are for lawn and tree service for a lot owned by the decedent. Defendant asserts that these expenses extend through 2009, and are for a longer period than the Executors are reasonably required to retain the property.

14

Plaintiffs' assert that this vacant lot is the site of Mrs. Williams' aunt's homestead and the Estate has incurred lawn and tree services necessary to preserve the property until a final distribution of the Estate can be effected.  From August 14, 2000, to December 29, 2009, the Estate has incurred $13,558.44 in lawn and tree services.  (Dkt. No. 111, Ex. A at 11-12).  Until the Estate liability is finally determined, the Executors are permitted to delay distributing the property of the Estate.  *See* 31 U.S.C. § 3713.  Therefore, the expenses incurred as a result of maintaining this property until the final settlement of the Estate is completed—and a distribution can be effected—are permissible deduction under Section 2053(a)(2).

Defendant also point to a $300 charge from Hill's Nursery—O'Connor Family Cemetery, on a schedule of funeral expenses—dated May 15, 2000.  (Dkt. No. 103, Ex. 112).  Defendant claims that if these bills are for upkeep at the cemetery, then they are not allowable as a Section 2053 deduction.  This expense appears to relate to Mrs. Williams funeral, and does not appear on the submitted expenses for "utilities and maintenance."  This appears to be an appropriate funeral expense.[5]

Defendant, again, claims that Section 2053(b) limits all miscellaneous administrative expenses incurred after August 14, 2004.  For the reasons articulated in the Court's Memorandum Opinion and Order denying Defendant's Motion to Alter or Amend Findings of Fact and Conclusions of Law, (Dkt. No. 112), this objection is overruled.

Because the Court finds that all of the business expenses submitted by Plaintiffs were actually and necessarily incurred in the administration of the Estate, they are deductible.  The total amount of deductible business expenses is $154,558.83.

---

[5]The Defendant represents that it no longer objects to "the $5,993[.91] of interest paid on the form 1041 income taxes due from the estate."  (Dkt. No. 110 at 14).

**Appraisal Fees**

Defendant does not object to any of the appraisal fees submitted by Plaintiffs.  Because the Court finds that the appraisal fees were actually and necessarily incurred in the administration of the Estate, all of Plaintiffs submitted appraisal fees, $270,339.99, are deductible.

**Conclusion**

The total amount of Plaintiffs' permissible deductions for administrative expenses is $60,357,085.39 ($2,278,176.89 for accounting fees, $2,635,809.68 for legal fees, $52,018,200.00 for interest on the loan from the Partnership, $3,000,000.00 for executor/trustee fees, $270,339.99 for appraisal fees, and $154,558.83 for business expenses).

Plaintiffs are ORDERED to submit a proposed final judgment within ten (10) days of the date this Memorandum Opinion and Order is signed.

It is SO ORDERED.

Signed this 15th day of September, 2010.

JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE